To this it was answered, and resolved by
the Court,
that this was not such an engagement as must necessarily be performed by the deceased in his lifetime, and could not be performed by executors or administrators.
This covenant may be performed by the administrator as well as by his principal, (a)
If two joint lessees covenant jointly and severally, and one of them die, such covenant will be binding on his executors, notwithstanding he should happen to die before the commencement of the term, and notwithstanding the whole interest in the lease must, as being joint, necessarily survive to his co-lessee. 2 Burr. 1190, 1197; 2 G. Bacon, 68.
It is generally true that the administrator is only liable where his intestate was liable. Esp. 199; Cro. Eliz. 282. But here the intestate was bound; and he could make a contract which should eventually charge his representatives, though no suit could have been maintained against himself. A man may bind himself and his executors to pay' a certain sum in one year from his death. So he may bind himself and his executors to pay a certain sum in one year; his death within the year will not discharge the executors, though it is true that no action could have been maintained against him, the breach not happening till after his death.
If a man covenant with another, and die, an action lies against his representative, though not named, unless the *47 covenant determines by tbe death of the covenantor, i. e. unless it be for a personal act; but an action does not lie upon a covenant in law, not broken until the death of the covenantor. Com. Dig. Covenant, C. 1; 3 Wooddeson, 87; Esp. 296.
From these authorities it may be inferred that on a covenant in a deed where the thing to be done is not a personal act, one which can only be done by the covenantor, an action maybe maintained against the representative where the breach happens after the death of the covenantor.
A man may covenant for the acts of another. 1 Strange, 553 ; Burr. 1196 ; Esp. 296.
The case of Heaver v. Thompson, King’s Bench, June 25, 1803, before Lord Ellenbokough, is in point.
“ This was an action against an executor on a bond for ¿£100, given as security for the honesty of one Cooper, who was employed as book-keeper at the Angle Inn, on the recommendation of the defendant’s testator [James Marsh, who executed this bond].
“ [Mr. Prskine stated that he could prove defalcations in Cooper’s account to an amount considerably greater.]
“ Mr. Park [on the other side] stated that the defalcations of Cooper were after the death of Marsh, the defendant’s testator. He admitted that the executors were bound to answer any defalcations in the lifetime of Marsh, but he thought it would be extremely hard that a man’s family should be bound for an indefinite time by a bond given merely as a security for the honesty of the person recommended. The learned counsel cited some authorities, which he conceived were against this supposition.
“ Lord Ellenborough said that, whether it was a hardship or not, it was certainly the law, that, if a man gave a bond as a security for the good behavior or good conduct of any individual in any office, this bond was binding on his executors as long as he continued in that office. He had himself known a similar bond of ¿£10,000 paid by executors, though the bond was executed twenty years ago.
“ Mr. Park said he wished this might be generally known, as it would make men a little more cautious in entering into such securities.
*48 “ The verdict was [then] given for the plaintiff [subject to a reference on the accounts].” (a)
Securities given by executors, administrators, and guardians, in this State, must all stand upon the same footing with the present; and it never was doubted that the estates of the bondsmen were liable, though the waste was committed after their death.
The proper remedy against the mischiefs that have been suggested by the counsel for the defendant would be for the sureties to stipulate only for a certain time; or to introduce a stipulation that, on notice by the surety that he would no longer be holden, the responsibility should terminate. If no such covenants are inserted, and the covenantors oblige themselves as long as the deputy remains in office, it must depend on the pleasure of the sheriff how long they shall be bound. Arguments from inconvenience have no place where the law is clear. The administrator must answer for defaults till the deputation given to Nathaniel Ladd was revoked. (b)
Judgment for amount of penalty of the bond. Execution for damages, §957.20, and costs.[1]

 1 Fonbl. 345, n. c; 2 G. Bacon, 69; Cro. Eliz. 552, 553:

 See Boston Gazette, Sept. 1, 1803.*

 Sureties in a recognizance to keep the peace, it is said, are not discharged by their death; their executors or administrators continue bound. 4 Burn, 268, 269; 1 Hawk. P. C. 129; Dalt. c. 120; 1 Hawk. P. C. b. 1, c. 60, § 17, p. 258.

 This decision is supported by White’s Ex’rs v. Commonwealth, 1861, 39 Pa. St. 167; and Royal Ins. Co. v. Davies, 1875, 40 Iowa, 469.
• In Calvert v. Gordon, 1828, 7 Barn. & C. 809 (s. c. 3 Man. & R. 124), and Gordon v. Calvert, 1828, 2 Sim. 253; (s. c. 1828, 4 Russ. 581), the controversy arose out of a bond for the fidelity of a clerk. Soon after the surety’s death, his executrix gave a written notice to the obligors, that she would no longer remain surety; but she was nevertheless held liable for breaches occurring after the giving of the notice. The position that the surety’s death ipso facto relieved his estate from liability for subsequent breaches was not suggested.
Whether a guaranty of the payment by another for goods to be sold or *49 moneys to be advanced, the guaranty being stipulated to continue until notice given, will be terminated by the death of the guarantor, quiere ?
In Bradbury v. Morgan. 1862, 1 Hurlst. & C. 249, it was held, that death does not terminate such a guaranty. Contra, Jordan v. Dobbins, 1877, 122 Mass. 168. In both cases the advances sought to be recovered were made without notice of the death of the guarantor. The point in controversy has been whether such a guaranty, until acted upon, is to bo regarded as a contract, or as merely in the nature of an authority.
In Harriss v. Fawcett, 1873, L. R. 8 Ch. App. 866; s. c. L. R. 15 Eq. 311, Lord Romilly, M. R., and Meli.ish, L. J., differed as to the correctness of the decision in Bradbury v. Morgan; but, upon the facts, as found by the appellate court, the case was disposed of upon other grounds.

 Annexed to the manuscript is a printed slip, which seems to have been cut from the “ Boston Gazette,” containing a report of Heaver v. Thompson, substantially the same as recited in the opinion.